RIKER et al. v. PRESIDENT, ETC., OF FIRE INSURANCE CO. OF
NORTH AMERICA.

(Supreme Court, Appellate Division, Fourth Department.  January 5, 1904.)

1. FIRE INSURANCE—PROOFS OF LOSS—WAIVER.
    Fire insurance adjusters requested insured to furnish them a list of
the property destroyed, stating that the adjusters for the different com-
panies would get together and see if they could not "fix out" the insured,
and thereafter, and at a time when there were still 60 days under the
policy, in which to furnish proofs of loss, the adjusters stated that there
were things in the list which they did not understand; but no proofs of
loss were furnished.  Held, that there was no waiver of the condition of
the policy requiring insured to furnish proofs of loss.
    McLennan, P. J., and Spring, J., dissenting.

Action by Edward L. Riker and others against the president and
directors of the Fire Insurance Company of North America, of Phila-
delphia, Pa.  The complaint was dismissed.  Motion for a new trial,
made by the plaintiffs on exceptions, heard in the first instance by the
Appellate Division.  Motion denied.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS,
HISCOCK, and STOVER, JJ.

F. W. Smith, for plaintiffs.
McGuire & Wood, for defendants.

STOVER, J.  This is a motion for a new trial made by the plain-
tiffs upon exceptions ordered to be heard in the first instance by the
Appellate Division.

Plaintiffs obtained from defendants a standard policy of insurance,
and some time thereafter the property insured, or a portion thereof,
was burned.  A few days after the fire, an adjuster of the defendants
called upon one of the plaintiffs, and requested information as to the
fire, stating that he had been looking over the ruins; that the other
owners he had met could not give the adjusters all the information
they desired, and they had waited for that plaintiff.  He also stated
that they wanted an itemized statement of each article, and its cost,
sent to them; and, upon being told that that would be impossible, be-
cause the outfit was purchased as a whole, he then stated, according to
plaintiffs' version, that they could get along by taking a catalogue and
getting it as near as they could.  "He said we could make it out and
send it to Knapp, and he would send it to the other adjusters, and he
said, 'We will get together and see if we cannot fix you fellows out.'"
The next morning, according to plaintiffs' version, this same adjuster
called upon one of the plaintiffs, and said, substantially, that, if any-
thing more than the list spoken of was needed, he would write him;
and he was then told to write to Mr. Riker, another of the plaintiffs,
as the one he was then talking with would be in Canada.  The list
had not then been furnished.  It would appear from the record that
the object of the adjusters upon their first visit to the premises was to
obtain information with respect to the fire; that the plaintiffs who
had and could give the information did not appear until near the close
of the day, and after some of the adjusters had left the premises.

Plaintiffs, some time after this interview, made out a list, which was headed: "List of Machinery and Outfit of Ontario Canning Factory. Burned Sept. 19, 1902." The list does not purport to give the estimated loss, but the various items have extensions of figures—whether the original cost or present value, or what relation they bear to the articles, is not stated. Subsequent to the sending of the list, the defendants' adjuster, together with an adjuster of another company, called upon the plaintiff Sanders, and told him that there were things in the list they did not understand, and asked for some explanation. According to plaintiffs' testimony, they said they were looking for the man who made out the list; that there were some things about it they did not understand; and then said they would appoint a day to meet plaintiffs Pintler and Riker, as Sanders had told them they were the persons who made out the list. This testimony of plaintiffs is contradicted by the adjuster, who says he told Sanders the list was unsatisfactory and incomplete, and could not be used; and Sanders said he did not know anything about it, that he did not make it, and that Pintler and Riker were the men to see. Sanders denies that he was told the list was useless. The plaintiffs took no steps to ascertain in what respect the list furnished was unsatisfactory or not understood, and furnished no other statement or proof, except the list above mentioned. At the close of the evidence, the plaintiffs' complaint was dismissed, apparently upon the ground that plaintiffs had failed to establish a cause of action against the defendant.

The claim of the plaintiffs is that giving the list to the defendants' adjuster, under the circumstances, amounted to a waiver of proofs of loss. It appears that Pintler, after the interview with the adjusters in which it was stated there was something about the list they did not understand, received a letter from his son, in which, according to his own statement, his son notified him that Sanders had had an interview with the adjusters, and the adjusters wanted to see him. It will be seen, taking the testimony of the plaintiffs Sanders and Pintler, that they knew the list furnished needed some explanation, and the adjusters wished to see them about it.

The standard policy contains the following clause:

"If fire occur the insured shall give immediate notice of any loss thereby in writing to this company, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, make a complete inventory of the same, stating the quantity and cost of each article, and the amount claimed thereon; and, within sixty days after the fire, unless such time is extended in writing by this company, shall render a statement to this company, signed and sworn to by said insured as to the time and origin of the fire; the interest of the insured and of all others in the property; the cash value of each item thereof and the amount of loss thereon; all incumbrances thereon; all other insurance, whether valid or not, covering any of said property; and a copy of all descriptions and schedules in all policies; any changes in the title, use, occupation, location, possession or exposures of said property since the issuing of this policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of the fire."

The interview between plaintiff Sanders and the adjuster, in which it was stated that there were things in the list they did not understand, occurred on October 17th; the fire occurred on September 19th;

and the 6o days within which proofs of loss should have been furnished expired December 18th.

We think the nonsuit was properly granted. The evidence was not sufficient to warrant the jury in finding that there was a waiver on the part of the defendant of the duty of the plaintiffs to furnish the proofs of loss described in the policy. Waivers of conditions in policies have received liberal constructions, and, in order to avoid forfeitures, rigid rules of interpretation have not been favored; and yet, with this in view, we should not lose sight of the fundamental rule that the intention or understanding of the parties is to control. In cases of disagreement as to the actual conclusion of the parties, if one to whom a duty is owing has by his acts led the other to believe that he would not require the performance of the duty, and the one relying upon such belief has neglected to perform the duty, a waiver would be implied, and the party in default relieved. We must presume that parties doing business of this character enter upon the transaction with some knowledge of their rights and obligations, and the duty to act fairly is reciprocal. The agents of the defendant, visiting the fire for the purpose of obtaining information in regard to it, requested the list to be furnished; but this was nothing more than the policy itself required. At the time the agents left the premises upon the first visit, they had not seen the list, and did not know what form the plaintiffs would put it in. They had a right to assume that, as to the information asked for, the list or inventory would be in substantially the form which the policy indicated. The statement that "we will get together and see if we cannot fix you fellows out" could not be interpreted to mean, "If you furnish us with any sort of a list, we will pay the amount of the policy," which is substantially the interpretation now put upon it by the plaintiffs. When, subsequently, the plaintiffs were informed—and it clearly appears that they were informed—that there was something in the list which was not understood, it was their plain duty to take steps to protect their interests, and to explain the lists. They then had more than 3o days within which to make a list, under the policy; and certainly the notice that there were some things in the list that were not understood was as clear an indication that the list was not received as a compliance with the policy as the statement of the insurers that they would "try and fix them out," if the list was furnished, was an indication of intent to waive. It would seem that the better interpretation of the transaction is that the insurers were endeavoring to obtain satisfactory information, and, if it should be obtained, probably an adjustment would be had without resort to proofs; and the conversations and transactions between the parties indicate that it was simply an attempt to obtain information which might lead to a possible adjustment, rather than an intention to waive the conditions of the policy. No argument is needed to show that the list furnished was in no wise an attempt to comply with the conditions of the policy, nor is it claimed to be such, but the plaintiffs' whole case rests upon the deduction of a waiver from the acts of the insurer.

This was concededly an incendiary fire. The insurer was endeavoring to get such information as it could. The plaintiffs furnished

no satisfactory information, and in fact seem to have neglected all measures calculated to aid, not only in a determination of the origin or cause of the fire, but as to the condition of, and loss upon, the property insured. A total loss is claimed. The plaintiffs had ample opportunity, after notice that further information was required, to protect themselves, either by furnishing the information, or by complying with the plain condition of the policy, and furnishing the inventory and statements there required. They neglected to do either. We think the transactions between the adjusters and the plaintiffs were not sufficient to warrant a finding of a waiver on the part of the insurer, and that the plaintiffs' failure to furnish the information required under the conditions of the policy was a complete defense to the action.

The complaint was properly dismissed, and the plaintiffs' exceptions must be overruled.

Plaintiffs' exceptions overruled, motion for new trial denied, and judgment ordered for defendants. with costs. All concur, except McLENNAN, P. J., and SPRING, J., who dissent.